Tej P. Singh
California Bar No. 314386
HODGES & FOTY, LLP
1055 West 7th Street, 33rd Floor - #165
Los Angeles, CA 90017
Phone: 877-342-2020
Fax: 713-523-1116
Email: tsingh@hftrialfirm.com

Don Foty
(Will apply for *pro hac vice* admission)
Texas Bar No. 24050022
David W. Hodges
(Will apply for *pro hac vice* admission)
Texas Bar No. 00796765
HODGES & FOTY, LLP
4409 Montrose Blvd, Suite 200
Houston, Texas 77006
Phone: (713) 523-0001
Fax:    (713) 523-1116
Email: dfoty@hftrialfirm.com
Email: dhodges@hftrialfirm.com

*Counsel for Plaintiff and Putative Class Members*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER HODGES, on Behalf of Himself and on Behalf of All Others Similarly Situated §§§§<br><br>        Plaintiff, §§<br><br>V. §§§<br><br>AMERICAN SPECIALTY HEALTH INCORPORATED and AMERICAN SPECIALTY HEALTH FITNESS, INC., §§§§<br><br>        Defendants. § | CIVIL ACTION NO. '20CV1158 LAB AHG<br><br>CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF<br><br>JURY TRIAL DEMANDED |

Case No. _____

## PLAINTIFF'S CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.    Plaintiff Walter Hodges ("Plaintiff") brings this case as a class action against Defendants American Specialty Health Incorporated and American Specialty Health Fitness, Inc. ("Defendants") pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.  Defendants operate a fitness program known as "Active & Fit Direct" which provides customers with membership to thousands of participating fitness centers nationwide.  Customers of Defendants' fitness program pay $25 per month (plus tax) and a $25 enrollment fee in exchange for access to fitness centers across the country.  Unfortunately, Defendants made the unconscionable decision to keep charging their customers monthly membership fees when fitness centers were closed following the COVID-19 Pandemic.

2.    To sign up for Defendants' program, customers provide Defendants with their credit card or debit card information.  Defendants then automatically charge their customers as payments are due on a monthly basis.

3.    Beginning in March 2020, gyms across the country closed down indefinitely as "stay at home" and "shelter in place" orders were issued.  However, Defendants continued charging their customers the full monthly membership fees.  In doing so, Defendants made the deliberate decision to take millions of dollars from their customers who did not have access to the service Defendants promised, agreed, and warranted to them.

4.    Defendants' agreement, warranty, and representation to their customers, including Plaintiff was that in exchange for payment, Defendants will provide access to thousands of participating fitness centers nationwide.

5.    Defendants' website states as follows:

The Active&Fit Direct™ program is designed to help you achieve better health through regular exercise without breaking the bank. The program includes a membership to 9,000+ participating fitness centers nationwide at just a fraction of average market prices ($25/month plus a $25 enrollment fee).

The Active&Fit Direct program also includes:

- Online directory maps and locator for fitness centers (available on any device)
- A free guest pass to try out a fitness center before enrolling (where available)

- The option to switch fitness centers at anytime

(*See* https://www.activeandfitdirect.com/About, last visited June 22, 2020)

6. The terms of service further state:

As a participant in the Program, you will have basic membership access to Active&Fit Direct contracted Fitness Centers. Depending on the specific services available at the Fitness Center, your basic membership will give you access to standard fitness club or exercise center services, which may include (again, depending availability at the Fitness Center): access to cardiovascular equipment; free weights; resistance training equipment; group exercise classes (yoga, dance, Pilates, etc.); and, where available, amenities such as saunas, steam rooms, and whirlpools.

7. This promise to provide access to participating fitness centers formed the basis of the agreement with Plaintiff and the Class Members. Indeed, the reason Defendants' customers pay their monthly membership fees is to have access to participating fitness centers. However, Defendants have continued to charge their customers when the fitness centers closed following the COVID-19 Pandemic.

8. During the pandemic, millions of Americans lost their jobs and the ability to earn a living. Millions of people are struggling to survive. Rather than stop charging their customers during the pandemic, like other business have done, Defendants have continued taking money from their customers. The Plaintiff and Class Members need the money that Defendants have unlawfully taken from them. Defendants have taken this decision to profit from the COVID-19 Pandemic to the detriment of millions of Americans.

9. Through the conduct described in this Complaint, Defendants have violated California, Texas and federal law. Plaintiff brings this case as class action for breach of contract, unjust enrichment, money had and received, breaches of express and implied warranties, under the Magnuson-Moss Warranty Act, under the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, pursuant to the Texas Deceptive Trade Practices Act ("DTPA"), and for Declaratory Relief.

Case No. _____

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act found in 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the class members are citizens of a state different than that of Defendants.

11.    This Court has personal jurisdiction over Defendants because Defendants operate in California and they maintain their headquarters in California located at 10221 Wateridge Circle, San Diego, California 92121.

12.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims in this Complaint took place in this district.  That is, the decision to violate the law as described in this lawsuit was made in this district. In particular, the decision to wrongfully charge their customers the full monthly membership fees while fitness centers were closed nationwide was made from the California headquarters.

## PARTIES

13.    Plaintiff Walter Hodges is a resident of San Antonio, Texas.  Mr. Hodges is a current member of Defendants' fitness program, paying $25.00 (plus tax) per month on a month-to-month basis.  Plaintiff has been a member since at least 2019.  In March 2020, States within the US began a mandatory closure of all non-essential businesses, which included gyms and fitness facilities.  For example, beginning at 12:01 am on Tuesday, March 17, San Francisco, Marin, Santa Clara, Santa Cruz, San Mateo, Contra Costa, and Alameda Counties in California were placed under a mandatory "shelter in place" order.[1]   On March 24, 2020, San Antonio, Texas (in Bexar County) was placed under a mandatory "shelter in place" order.[2]  During the "shelter in place" order, Plaintiff and the Class Members did not have access to any fitness center.  Despite that fact, Defendants continued to charge Plaintiff the full amount of the membership fee.  Plaintiff signed

---

[1] https://en.wikipedia.org/wiki/Timeline_of_the_COVID-19_pandemic_in_the_United_States

[2] https://www.sacurrent.com/the-daily/archives/2020/03/23/san-antonio-and-bexar-county-impose-shelter-in-place-order-through-april-9-to-contain-coronavirus-spread

Case No. _____

*(Walter Hodges, et al. v. American Specialty Health Incorporated, et al.)*

4

up for Defendants' month-to-month membership with the belief and on the basis that he would have access to the gyms and fitness facilities that Defendant promised.

14.     The mandatory closure of all non-essential businesses continued to May 2020, when certain States began easing restrictions.  However, Defendants continue to charge their customers the full amount of the membership fee despite the fact that fitness centers remain closed or only operate at a reduced capacity.

15.     Defendant American Specialty Health Incorporated is a foreign corporation organized under the laws of Delaware. Defendant can be served with process by serving its registered agent Cogency Global, Inc. at 1325 J. St., Suite 1550, Sacramento, CA 95814.

16.     Defendant American Specialty Health Fitness, Inc. is a foreign corporation organized under the laws of Delaware. Defendant can be served with process by serving its registered agent Cogency Global, Inc. at 1325 J. St., Suite 1550, Sacramento, CA 95814.

17.     The "National Class" consists of all individuals in the United States who were charged the full membership fee by Defendants at any time when they were under a "stay at home, "shelter in place" or similar order due to the COVID-19 pandemic. Excluded from this Class are Defendants' officers and directors.

18.     The "Texas Class" consists of all residents of Texas who were charged the full membership fee by Defendants at any time when they were under a "stay at home, "shelter in place"  or similar order to the COVID-19 pandemic. Excluded from this Class are Defendants' officers and directors.

## FACTS

19.     The novel Coronavius has infected over 2,000,000 Americans, caused the deaths of over 120,000 Americans, and has caused millions of Americans to lose their jobs.  Currently, the nation is facing a troubled economic and health situation.  Despite these troubling times, Defendants made the deliberate decision to take millions of dollars from their customers.

20.     Defendants operate a fitness program known as "Active & Fit Direct" which provides customers with access to thousands of participating fitness centers nationwide.

Defendants promote their services on their website https://www.activeandfitdirect.com/. On this website, Defendants state that their members can "Explore Our 11,000+ Fitness Centers"

21.    Defendants website further states:

The Active&Fit Direct program partners with top fitness centers across the country—ranging from conventional gyms to studios with yoga, cycling, and more.* With many locations offering free guest passes and the ability to change fitness centers any time at no additional cost with your Active&Fit Direct membership, you can explore the possibilities and find your perfect fit.

22.    Defendants' website reiterates that their customers will have access to thousands of gyms and fitness facilities:

The Active&Fit Direct$^{TM}$ program is designed to help you achieve better health through regular exercise without breaking the bank. The program includes a membership to 9,000+ participating fitness centers nationwide at just a fraction of average market prices ($25/month plus a $25 enrollment fee).

The Active&Fit Direct program also includes:

- Online directory maps and locator for fitness centers (available on any device)
- A free guest pass to try out a fitness center before enrolling (where available)
- The option to switch fitness centers at anytime

(See https://www.activeandfitdirect.com/About, last visited June 22, 2020)

23.    Customers of Defendants' fitness program pay $25 per month (plus tax) and a $25 enrollment fee in exchange for access to fitness centers across the country. This promise to provide access to fitness centers formed the basis of the agreement with Plaintiff and the Class Members. Indeed, the reason Defendants' customers pay their monthly membership fees is to have access to the participating fitness centers.

24.    Defendants further promised, agreed, and warranted as follows:

As a participant in the Program, you will have basic membership access to Active&Fit Direct contracted Fitness Centers. Depending on the specific services available at the Fitness Center, your basic membership will give you access to standard fitness club or exercise center services, which may include (again, depending availability at the Fitness Center): access to cardiovascular equipment; free weights; resistance training equipment; group exercise classes (yoga, dance, Pilates, etc.); and, where available, amenities such as saunas, steam rooms, and whirlpools.

25.     Despite the fact that the nation was under a lockdown following the COVID-19 Pandemic, Defendants made the unconscionable decision to keep charging their customers the full monthly membership fees when the participating fitness centers were closed

26.     This caused financial and economic harm to Plaintiff and the Class Members.

27.     Plaintiff has been a customer of Defendants since 2019.  Plaintiff resides in San Antonio, Texas.  On March 24, 2020, San Antonio, Texas (in Bexar County) was placed under a mandatory "shelter in place" order.[3]  This shelter in place order closed all participating fitness centers.  A further "stay home" order was extended to June 4, 2020.[4]  During this time, Defendants continued to charge Plaintiff despite the fact that all participating fitness centers were closed.

28.     On March 9, 2020, Defendants charged Plaintiff $27.06 in transaction number 2596257.

29.     On April 9, 2020, Defendants charged Plaintiff $27.06 in transaction number 2783573.

30.     On May 9, 2020, Defendants charged Plaintiff $27.06 in transaction number 2958039.

31.     Defendants continue to charge Plaintiff monthly membership fees to this day.

32.     Defendants never provided Plaintiff or any other Class Member a refund (or even offered a reduced/prorated membership fee) during the COVID-19 Pandemic in breach of their agreement, promise, and warranty.

33.     Defendants' conduct has caused significant financial and economic harm to Plaintiff and the Class Members as Defendants have willfully taken millions of dollars that rightfully belong to Plaintiff and the Class Members. Defendants' unconscionable conduct continues to this day.  As the second wave of the Coronavirus is on the horizon and more shelter

---

[3] https://www.sacurrent.com/the-daily/archives/2020/03/23/san-antonio-and-bexar-county-impose-shelter-in-place-order-through-april-9-to-contain-coronavirus-spread

[4]    https://www.ksat.com/news/local/2020/05/19/san-antonio-bexar-county-extend-stay-home-work-safe-order-until-june-4/

Case No. _____

*(Walter Hodges, et al. v. American Specialty Health Incorporated, et al.)*

7

in place orders are beginning to be issued, this lawsuit is intended to stop the illegal conduct of Defendants.

## COUNT I

### Breach of Contract, including Breach of the
### Implied Covenant of Good Faith and Fair Dealing

(On behalf of Plaintiff and the National Class)

34.     Plaintiff re-alleges and incorporates the allegations stated above as if set forth fully herein.

35.     At all relevant times, Plaintiff and the Class Members entered valid and enforceable contracts with Defendants whereby Defendants promised to provide access to participating fitness centers in exchange for the payment of membership fees.  Plaintiff and the Class Members have otherwise performed all obligations under their agreements with Defendants. Defendants have breached these contracts by charging Plaintiff and the Class Members while the fitness centers were closed.

36.     In addition, every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract.  Defendants breached the covenant of good faith and fair dealing because, to the extent Defendants had the discretion to bill the monthly membership rate, that discretion was exercised wrongfully under the circumstances when the fitness centers were closed.  Thus, Defendants breached the obligation of good faith and fair dealing.

37.     Indeed, Defendants exercised their discretion in bad faith by charging Plaintiff and the Class Members fees even after the "shelter in place" and other lockdown orders were issued beginning in March 2020.  To this day, Defendants have not refunded the amount of the charges.

38.     Defendants' contractual breaches, including the breaches of the implied covenant of good faith and fair dealing, caused Plaintiff and the Class to suffer damages in the amount to be determined at trial.

39.     Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the

participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

## COUNT II

### Conversion

(On behalf of Plaintiff and the National Class)

40.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

41.    Plaintiff and the Class Members owned and possessed money that Defendants took for membership fees beginning in March 2020.  Plaintiff and the Class Members had a right to retain their money and Defendants unilaterally charged the Plaintiff's and Class Members' debit cards and credit cards even when the "shelter in place" and other lockdown orders were issued.

42.    To this day, Defendants have intentionally refused to give Plaintiff's and the Class Members' money back to them.

43.    Plaintiff and the Class Members were harmed through Defendants' intentional charging of their credit cards and debit cards.

44.    Defendants' conduct was a substantial factor in causing Plaintiff's and the Class Members' harm.

45.    Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

## COUNT III

### Unjust Enrichment

(On behalf of Plaintiff and the National Class)

46.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

47.    Defendants received a benefit by charging the credit cards and debit cards of the Plaintiff and Class Members even when the participating fitness centers were closed following the COVID-10 Pandemic.

48.    Defendants have knowledge of such benefits.

49.    Defendants have been unjustly enriched in retaining the money from Plaintiff's and the Class Members' membership fees.

50.    Retention of that money under these circumstances is unjust and inequitable because Defendants have charged the Plaintiff and Class Members membership fees for services that the Plaintiff and Class Members did not have access to following the "shelter in place" and lockdown orders that were issued.

51.    This conduct has caused significant injury to Plaintiff and the Class Members. Given that Defendants' retention of the money is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members in an amount to be determined at trial.

52.    Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

## COUNT IV

### Money Had and Received

(On Behalf of Plaintiff and the National Class)

53.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

54.    Defendants charged and received membership fees that were intended for the benefit of Plaintiff and the Class Members. Defendants did not use those membership fees for the benefit of Plaintiff and the Class Members and have not given back or refunded all of the wrongfully obtained money to Plaintiff and the Class Members.

55.    Defendants obtained money in the form of membership fees that were intended to be used to provide fitness center access to Plaintiff and the Class. However, Defendants have

Case No. _____

charged and retained membership fees while the fitness centers were closed following the COVID-19 Pandemic.

56. Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

## COUNT V

### Breach of Express Warranty

(On Behalf of Plaintiff and the National Class)

57. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

58. This cause of action is brought against Defendants for breaching their express warranty. In connection with the sale of their membership plans, Defendants made an express warranty that Defendants would provide access to participating fitness centers.

59. This express warranty was made by Defendants to Plaintiff and the Class Members.

60. Defendants' affirmation of fact and promise became part of the basis of the bargain between Defendant and Plaintiff and the Class Members, thereby creating an express warranty that the services provided by Defendants would conform to that affirmation of fact, representation, promise, and description.

61. The representations made by Defendants were the basis and reason why Plaintiff and the Class Members purchased Defendants' membership plans.

62. Here, Defendants have breached this express warranty because the participating fitness centers were closed and not accessible to Plaintiff and the Class Members. Nevertheless, Defendants still charged Plaintiff and the Class Members the full amount of the monthly membership fees.

63. Plaintiff and the Class Members have suffered economic harm as a result. As a result of Defendants' illegal conduct, Plaintiff and the Class Members are entitled to reimbursement of the amounts charged to them for membership fees during the class period.

Case No. _____

(*Walter Hodges, et al. v. American Specialty Health Incorporated, et al.*)

11

64.     Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

65.     Plaintiff and Class Members also seek reasonable attorney's fees, expenses, and court costs.

### COUNT VI

**Breach of Implied Warranty of Merchantability**

(On Behalf of Plaintiff and the National Class)

66.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

67.     This cause of action is brought against Defendants for breaching implied warranties regarding the membership plans.

68.     Here, Defendants sold to Plaintiff and the Class Members membership plans that did not provided any benefit, or if anything, marginal benefit. Indeed, the plans Defendants sold did not provide access to the participating fitness centers because they were closed.

69.     In doing so, Defendants sold worthless plans to Plaintiff and the Class Members.

70.     Plaintiff and the Class Members have suffered economic harm as a result.  As a result of Defendants' illegal conduct, Plaintiff and the Class Members have suffered injury/economic loss and are entitled to reimbursement of the amounts charged to them for membership fees during the class period.

71.     Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

72.     Plaintiff and Class Members also seek reasonable attorney's fees, expenses, and court costs.

Case No. _____

*(Walter Hodges, et al. v. American Specialty Health Incorporated, et al.)*

## COUNT VII

**Violation of California's Consumers Legal Remedies Act**

**California Civil Code § 1750,** *et seq***.**

(On Behalf of Plaintiff and the National Class)

(Injunctive Relief)

73.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

74.     Plaintiff and the Class Members are consumers who paid fees for Defendants' service which was to provide access to thousands of fitness centers for personal use. Plaintiff and the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

75.     Defendants' membership program that Plaintiff and the Class Members purchased was a "service" within the meaning of Cal. Civ. Code § 1761(b).

76.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of services to consumers.

77.     Defendants' advertising that their customers would have access to the fitness centers upon paying a membership fee was false and misleading to a reasonable consumer, including Plaintiff, because such fitness centers were closed and yet Defendants continued to charge them.

78.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "Misrepresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresented the particular characteristics, benefits and quantities of the services. Defendants have charged Plaintiff and the Class Member membership fees despite not having access to the fitness centers.

Case No. _____

79.     Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the particular standard, quality or grade of the services.

80.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants advertise services with the intent not to provide those services as advertised. Defendants have advertised and charged for access to the participating fitness centers despite their customers not having access and usage of those fitness centers.

81.     Plaintiff and the Class Members acted reasonably when they purchased and paid for Defendants' membership plan in the belief that Defendants' representations were true and lawful.

82.     Plaintiff and the Class Members suffered injuries caused by Defendants because (a) they would not have purchased or paid for Defendants' membership plan absent the representations and omission of a warning that they would be charged even if the participating fitness centers were closed; (b) Plaintiff and the Class Members would not have purchased and paid for the memberships on the same terms absent Defendants' representations and omissions; (c) Plaintiff and the Class Members paid a price premium for Defendants' membership plan based on Defendants' misrepresentations and omissions; and (d) Defendants' membership plan did not have the characteristics, benefits, or quantities as promised.

83.     Under California Civil Code § 1780(a), Plaintiff and the Class Members seek injunctive and equitable relief for Defendants' violations of the CLRA.

84.     Wherefore, Plaintiff seeks injunctive and equitable relief for these violations of the CPLR.

Case No. _____

## COUNT VIII

### Violation of California's Unfair Competition Law

### California Business & Professions Code § 17200, *et seq.*

(On Behalf of Plaintiff and the National Class)

85.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

86.    Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ....".

87.    Defendants' advertising that the membership plans would include access to thousands of participating fitness centers upon paying a membership fee is false and misleading to a reasonable consumer, including Plaintiff, because such fitness centers were closed following the COVID-19 Pandemic and yet, Defendants still continued to charge their customers, including Plaintiff.

88.    Defendants' business practices, described herein, violate the "unlawful" prong of the UCL by violating the CLRA, the FAL, and California's Health Studio Services Contract Law and other applicable law as described herein.

89.    Defendants' business practices, described herein, violate the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising and the charging of membership fees while the participating fitness centers were closed is of no benefit to consumers.

90.    Defendants violated the fraudulent prong of the UCL by misleading Plaintiff and the Class Members to believe that they would only be charged fees when they would have access to the participating fitness centers and by charging membership fees to Plaintiff and the Class Members after the such fitness centers were closed.

91.     By imposing the charges on Plaintiff and the Class Members after the fitness centers were closed, Defendants obtained tens of millions of dollars for themselves.

92.     Plaintiff and the Class Members acted reasonably when they signed up for membership based on the belief that they would only be charged fees when Defendants honored the promise to provide access to thousands of participating fitness centers.

93.     Plaintiff and the Class Members suffered injuries caused by Defendants because (a) they would not have purchased or paid for Defendants' membership plan absent the representations and omission of a warning that they would be charged even if the participating fitness centers were closed; (b) Plaintiff and the Class Members would not have purchased and paid for the memberships on the same terms absent Defendants' representations and omissions; (c) Plaintiff and the Class Members paid a price premium for Defendants' membership plan based on Defendants' misrepresentations and omissions; and (d) Defendants' membership plan did not have the characteristics, benefits, or quantities as promised.

## COUNT IX

### Violation of California's False Advertising Law

### California Business & Professions Code § 17500, *et seq.*

(On Behalf of Plaintiff and the National Class)

94.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

95.     California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ...or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

96.     Defendants engaged in a scheme of charging customers monthly membership fees even after many or all participating fitness centers had closed.

Case No. _____

*(Walter Hodges, et al. v. American Specialty Health Incorporated, et al.)*

16

97.     Defendants' advertising and marketing misrepresented and/or omitted the true content and nature of Defendants' services. Defendants' advertisements and inducements were made in and originated from California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the promotional materials were intended as inducements to purchase and maintain memberships, and are statements disseminated by Defendants to Plaintiff and the Class Members. Defendant knew that these statements were unauthorized, inaccurate, and misleading and nevertheless, continued to charge Plaintiff and the Class Members after the participating fitness centers had closed following the COVID-19 Pandemic.

98.     Defendants' advertising that their customers would have access to the participating fitness centers upon paying a membership fee is false and misleading to a reasonable consumer, including Plaintiff, because such fitness centers were closed and yet, Defendants continued to charge them.

99.     Defendants violated § 17500, *et seq*. by misleading Plaintiff and the Class Members to believe that they would be charged membership fees only when they had access to the participating fitness centers that Defendants promised.

100.    Defendants knew or should have known, through the exercise of reasonable care that their advertising was false and misleading. Further, Defendants knew or should have known that they breached their contracts with their customers by charging the full membership fees when the participating fitness centers were closed.

101.    Plaintiff and the Class Members lost money or property as a result of Defendants' FAL violation because (a) they would not have purchased or paid for Defendants' membership plan absent the representations and omission of a warning that they would be charged even if the participating fitness centers were closed; (b) Plaintiff and the Class Members would not have purchased and paid for the memberships on the same terms absent Defendants' representations and omissions; (c) Plaintiff and the Class Members paid a price premium for Defendants' membership plan based on Defendants' misrepresentations and omissions; and (d) Defendants' membership plan did not have the characteristics, benefits, or quantities as promised.

**COUNT X**

**Violation of California's Health Studio Services**

**Contract Law Civil Code § 1812.80, *et seq*.**

(On Behalf of Plaintiff and the National Class)

102.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

103.    Under Cal. Civ. Code § 1821.92, any contract for heath studio services entered into in reliance upon any willful and false, fraudulent, or misleading information, representation, notice or advertisement of the seller shall be void and unenforceable.

104.    Here, Plaintiff and the Class Members signed up and paid for Defendants' membership plan based on Defendants' false and misleading representation that Plaintiff and the Class Members would have access to participating fitness centers, when, in fact, they did not have such access.

105.    Further, Cal. Civ. Code § 1812.85 requires that "[e]very contract for health studio services shall provide that performance of the agreed-upon services will begin within six months after the date the contract is entered into. The consumer may cancel the contract and receive a pro rata refund if the health studio fails to provide the specific facilities advertised or offered in writing by the time indicated."  Here, Defendants advertise that they provide access to thousands of participating fitness centers, when, in fact, Defendants have charged customers the membership fees even after many or all participating fitness centers had closed.  No pro rata refund or any other refund has been paid to Plaintiff and the Class Members.

106.    Accordingly, Plaintiff and the Class Members are entitled to economic damages for Defendants charging the full amount of the membership fees during the Class period.

**COUNT XI**

**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312**

(On Behalf of Plaintiff and the National Class)

107.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

108.   This cause of action is brought against Defendants pursuant to 15 U.S.C. § 2310(d)(1) for breaching express and implied warranties about the membership plans they sold. Section 2310(d)(1) states as follows:

    a.   a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.

109.   Here, Defendants' promised access to thousands of participating fitness centers.

110.   Defendants failed to honor this affirmation and promise.

111.   Plaintiff and the Class Members have suffered economic harm as a result. As a result of Defendants' illegal conduct, Plaintiff and the Class Members are entitled to reimbursement of the amounts charged to them for membership fees during the class period.

112.   Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

113.   Plaintiff and Class Members also seek reasonable attorney's fees, expenses, and court costs.

## COUNT XII

### Violation of Tex. Bus. & Com. Code §§ 17.41 et. seq

Texas Deceptive Trade Practices Act

(On Behalf of Plaintiff and the Texas Class)

114.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

115.   This cause of action is brought pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act, as codified in the Texas Business & Commerce Code §§ 17.41 *et. seq.* ("DTPA").

116.   Plaintiff was a consumer as defined by the Tex. Bus. & Com. Code § 17.45(4).

Case No. _____

117.    Plaintiff sought or acquired by purchase memberships, which is a "good" or "service" within the meaning of the DTPA. *See* Tex. Bus. & Com. Code § 17.45(1).

118.    Plaintiff sought or acquired a membership plan after Defendants made the false, misleading, and deceptive statement that they would provide access to thousands of participating fitness centers.

119.    Defendants' conduct violates Sections 17.46(b)(2), 17.46(b)(5), 17.46(b)(7), 17.46(b)(9), and 17.46(b)(24) of the Texas Business and Commerce Code.

120.    Defendants' illegal actions include, but are not limited to the following:

a.    Defendants represented that the membership plans were of a particular standard, quality, and grade that they are not.  Also, Defendants represented that they would provide access to thousands of participating fitness centers that they did not provide, and yet, still charged their customers the full amount of the membership fees.

b.    Defendants represented that the membership plans they sold have sponsorship, approval, characteristics, and benefits that they do not have.

c.    Breaching express and implied warranties, as further stated above.

121.    Defendants' false, misleading, and deceptive acts induced Plaintiff and the Texas Class Members to purchase the membership plans.

122.    But for Defendants engaging in the false, misleading, and deceptive acts, as identified in this Complaint, Plaintiff and the Texas Class Members would not have purchased the membership plans and would not have suffered economic harm.  As a result of Defendants' illegal conduct, Plaintiff and the Texas Class Members are entitled to reimbursement of the amount they spent.

123.    Plaintiff and the Texas Class Members also seek treble their economic losses because Defendants acted intentionally.

124.    Plaintiff and the Texas Class Members also seek reasonable attorney's fees, expenses, and court costs.

125.   Plaintiff and the Class Members also seek injunctive relief and equitable relief prohibiting Defendants from continuing to charge customers the full membership fees while the participating fitness centers are closed or operate at reduced capacity following the COVID-19 Pandemic.

## COUNT XIII

### Declaratory Relief

(On Behalf of Plaintiff and the National Class)

126.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

127.   An actual controversy has arisen and now exists between Plaintiff and the Class Members, on the one hand, and Defendants, on the other hand, concerning the respective rights and duties of the parties under the membership plans sold by Defendants.

128.   Defendants deceptively represented the terms and qualifications of the plans, diverted the membership payments for Defendants' own use and profit, have kept that money, and have refused to return it to Plaintiff and the Class Members after "shelter in place" and lockdown orders were issued.

129.   Plaintiff, on behalf of himself and the Class Members, seeks a declaration as to the Parties' respective rights and requests that the Court declare that Defendants' conduct is illegal, as alleged in this Complaint, so that future controversies may be avoided.

## CLASS ALLEGATIONS

130.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of themselves and on behalf of the following classes:

### NATIONAL CLASS

**All individuals in the United States who were charged a membership fee by Defendants at any time when they were under a "stay at home," "shelter in place" or similar order due to the COVID-19 pandemic. Excluded from this Class are Defendants' officers and directors.**

### TEXAS CLASS

**All residents of Texas who were charged a membership fee by Defendants at any time when they were under a "stay at home," "shelter in place" or similar order due to the COVID-19 pandemic. Excluded from this Class are Defendants' officers and directors.**

131.    **Numerosity**. The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that the proposed Classes contain thousands of members who have been harmed by Defendants' conduct as alleged herein. The precise number of Class Members is unknown to the Plaintiff but is believed to be well in excess of 1,000.

132.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Classes because all Class Members were injured through the uniform misconduct described above and were all subject to Defendants' illegal conduct. Plaintiff is advancing the same claim and legal theories on behalf of the Classes.

133.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes.

134.    **Rule 23(b)(1):** Class action status is warranted under Rule 23(b)(1)(A) because prosecuting separate actions by or against individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendants.

135.    Class action status is also warranted under Rule 23(b)(1)(B) because prosecuting separate actions by or against individual members of the Classes would create a risk of adjudications with respect to individual members of the Classes, which would, as practical matter

be dispositive of the interests of the other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

136.    **Rule 23(b)(2):** This action is appropriate as a class action pursuant to Rule 23(b)(2) because Plaintiff seeks injunctive relief and corresponding declaratory relief for the Classes. Defendants has acted in a manner generally applicable to each member of the Classes.

137.    Defendants' unlawful practices, if not enjoined, will subject Plaintiff and the Class Members to continuing harm and will cause irreparable injuries to Plaintiff and the Class Members.

138.    The adverse financial impact of Defendants' unlawful actions is continuing and, unless preliminarily and permanently enjoined, will continue to irreparably injure Plaintiff and the Class Members.

139.    **Rule 23(b)(3):** This action is also appropriate as a class action pursuant to Rule 23(b)(3) because common questions of fact and law predominate over any individualized questions. These common legal and factual questions include, but are not limited to, the following:

    (a)    whether Defendants' representations discussed above are false, misleading, or objectively reasonably likely to deceive consumers;

    (b)    whether Defendants breached its agreement to provide access to thousands of participating gyms, fitness facilities and exercise centers;

    (c)    whether Defendants intentionally charged money belonging to Plaintiff and the Class Members;

    (d)    whether Defendants breached its warranty to provide access to thousands of participating gyms, fitness facilities and exercise centers; and

    (e)    whether Defendants has been unjustly enriched to the detriment of the Plaintiff and Class Members.

140.    **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class Members could afford such individualized litigation, it would place a tremendous strain on judicial economy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

141.    Indeed, by concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of members of the Class Members is readily identifiable from Defendants' records.

142.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or marketing were uniform; (2) Defendants' agreement with the Class Members was uniform; (3) Defendants' promise, warranty, and agreement to provide access to thousands of participating fitness centers was the same for all Class Members; and (4) the

necessary records to prove Defendants' illegal acts are in the possession of Defendants. Ultimately, a class action is a superior form to resolve the claims detailed herein because of the common nucleus of operative facts centered on Defendants' illegal conduct.

143. Unless a class is certified, Defendants will retain the money they wrongfully received as a result of its illegal conduct. Defendants have acted and refused to act on grounds generally applicable to all Class Members, making a class action a superior means to resolve this case.

### **JURY DEMAND**

144. Plaintiff hereby demands trial by jury on all issues.

### **PRAYER**

145. For these reasons, Plaintiff prays for:

    a. An order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure;

    b. A judgment against Defendants awarding Plaintiff and the Class Members their economic losses, treble damages, and all statutory penalties;

    c. Exemplary damages within the jurisdictional limits of the Court;

    d. An order awarding attorneys' fees, costs, and expenses;

    e. Pre- and post-judgment interest at the highest applicable rates; and

    f. Such other and further relief as may be necessary and appropriate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HODGES & FOTY, L.L.P.

By:  */s/ Tej P. Singh*
    Tej P. Singh
    California Bar No. 314386
    1055 West 7th Street, 33rd Floor - #165
    Los Angeles, CA 90017
    Phone: 877-342-2020
    Fax: 713-523-1116
    Email: tsingh@hftrialfirm.com

   And

    Don J. Foty
    (will apply for admission *pro hac vice*)
    Texas State Bar No. 24050022
    David W. Hodges
    (will apply for admission *pro hac vice*)
    Texas State Bar No. 00796765
    4409 Montrose Blvd., Suite 200
    Houston, TX 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116
    Email: dfoty@hftrialfirm.com
    Email: dhodges@hftrialfirm.com

   ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS

Case No. _____

*(Walter Hodges, et al. v. American Specialty Health Incorporated, et al.)*